## YALOWITZ v CUYAHOGA AMUSEMENT CO et

Ohio Appeals, 8th Dist, Cuyahoga Co
No 10294. Decided Feb. 3, 1930

Ben P. Rabb, Cleveland, for Yalowitz.
Alexander H. Martin, Cleveland, for Amusement Co.

VICKERY, PJ.

Now the question is: Did the court commit any error that would warrant a reviewing court in reversing the judgment in this case? We do not think so. We have read the statement of claim, the lease and the indemnity bond, and that indemnity bond clearly indicates that these two men Rogers and Wills were mere sureties on that bond and the rights of the sureties could not be changed or enlarged or their liability transferred to another person without their consent. An examination of the terms of the bond will show that the condition of the bond did not run to Hooper and his assignees, but simply to Hooper, and there might have been a reason why they would be willing as sureties to guarantee the contract to Hooper, because from this lease it was evident that the man who owned this park and was entitled to the rents from it, which rents were to be paid out of the proceeds of the game to the extent of twenty percent of the gross receipts, and that Wills and Rogers knowing Hooper was that kind of a man might be willing to guarantee the Amusement Company's rent to him because, as already pointed out, he had certain duties to perform with respect to collecting the receipts from each game at the end of the game.

Now while the **lease** provides that it shall not be assigned to a third person without the consent, in writing, of the parties, even if there were an assignment of this lease by the lessor, he could not affect the rights of the **sureties** which were personal to him. It is singular, but the lease itself provides for a different indemnity,—not a bond to be given,—but a sum of Three Hundred Dollars which was to be put up, and I do not think the lease anywhere refers to a bond that shall be given. The bond is something extraneous and outside, and while it insures the performance of the contract to Hooper, it did not insure the performance of the contract to any other person.

Now it will be noticed that this bond contains a provision that if the rents are not collected as they become due, or there has been an extension of time in the payment of these rents, **that** shall not affect the liability of one Hicks, who was a signer of that bond, in addition to the Amusement Company and the two defendants involved in this case. Now that provision apparently meant nothing. It did not reserve the rights against Wills and Rogers in case there had been an extension of time by the lessor or, if you please, his assigns, but only referred to the liability of Hicks which shall not be affected. Of course, the liability of the Amusement Company would not be affected and apparently Hicks was in such relation that **his** liability was not to be affected by the lessor or his assignee neglecting to collect the rents or for an extension of time for the payment of the rents, since the rights against Hicks, who was the Secretary of the Amusement Company especially reserved in order to make him liable personally, and thus inferentially stated that in case there had been an extension of time for the payment of rents, or there had been a neglect by the lessor or his assigns to collect the rents, the sureties to the bond other than Hicks would be released by such extension of time or neglect on the part of the lessor or his assigns.

But aside from that, the sureties had the right to say **for** what they were to be bound and **to** whom they were to be bound and this contention is supported by the case of **Black vs. Albery et al, 89 Oh St 240.** This is only in accordance with the general law of suretyship. As already stated, these sureties might be perfectly willing to guarantee rents to Hooper because they knew he was the kind of man who was alert and would see to it that the rents were collected, but to guarantee anyone else who might not be alert and not see to it that the rents were collected, with whom they had no contractual relation, whom they did not know, would be extending the doctrine of suretyship very greatly, we think.

Now that being so, and none of these things having been set up in the statement of claim, we think the court was right in sustaining the demurrer to the statement of claim, that it did not state a cause of action, and that fact was a good ground for the court in having vacated the judgment and a good ground for entering a judgment on the demurrer.

There being no error in the record, the judgment will be affirmed.

Sullivan and Levine, JJ, concur.